Affirmed and Memorandum Opinion filed August 22, 2006








Affirmed and Memorandum Opinion filed August 22, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00219-CR

____________

 

LOUIS IVAN AVILES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 339th
Criminal District Court

Harris County, Texas

Trial Court Cause No. 971,688

 



 

M E M O R A N D U M  O P I N I O N

Appellant, Louis Ivan Aviles, was convicted by a jury of
sexually assaulting a child and was sentenced to twenty-five years in prison by
the trial court.  Appellant raises four points of error to this Court.  In
points of error one, three, and four, appellant contends he was denied the
right to the effective assistance of counsel.  In his second point of error, he
claims the trial court erred by permitting testimony about extraneous matters
prejudicial to his case.   We affirm.








Prejudicial
Testimony

Appellant, in his
second point of error, complains about the following testimony from Matthew
Dexter, the investigating police officer in this case:

Prosecutor:  Did you have any
further contact with this case?

Dexter:         I spoke with
Officer Yanez again after he apprehended the Defendant, and it was agreed that
it would probably be in our best interest not to interview the Defendant.

Prosecutor:  Why is that?

Dexter:         Because of experience we had with the Defendant.

Appellant
argues this testimony invites the jury to speculate about facts not presented
at trial.[1]
He claims Athis testimony causes the jury to speculate as to what
the officers are talking about@ and that the State willfully calculated
the ill effects of this adverse speculation.  Appellant contends this testimony
Aleaves an
unmistakable mark of guilt that destroys [his] presumption of innocense [sic].
. . .@  Appellant did
not object to this testimony.  

To preserve error for appellate review, an appellant must
have made a timely, specific objection and received a ruling or a refusal to
rule from the trial court.  Tex. R. App.
P. 33.1(a).  The complaining party must have identified the grounds of
the objection with sufficient specificity to make the trial court aware of the
complaint, unless the specific grounds were apparent from the context.  Id. 
Even constitutional error can be waived by the failure to object.  Broxton
v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  Because appellant
did not object to this testimony, he has failed to preserve this error for our
review.  We overrule appellant=s second point of error.








Ineffective
Assistance of Counsel

In appellant=s first, third,
and fourth points of error, he claims he was denied effective assistance of
counsel when (1) his trial attorney failed to object to Officer Dexter=s opinion
testimony that the complainant=s injuries were consistent with a sexual
assault, (2) his trial attorney failed to object to Officer Dexter=s testimony that
it was best not to interview appellant A[b]ecause of
experience we had with the Defendant,@ and (3) his trial
attorney extracted evidence about appellant=s gang
involvement, opening the door for the State=s damaging
cross-examination.

The Sixth Amendment to the United States Constitution
guarantees the right to reasonably effective assistance of counsel in criminal
prosecutions.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To
prove a claim of ineffective assistance of counsel, an appellant must show by a
preponderance of the evidence that his trial counsel=s representation
was deficient, in that it fell below an objective standard of professional
norms.  Id.; Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002).  An appellant must also show this deficient performance prejudiced his
defense.  Strickland, 466 U.S. at 687.  Prejudice may be proven with
less than a preponderance of the evidence by showing a reasonable probability
exists that, but for his counsel=s unprofessional
errors, the proceeding=s result would have been different.  Id.
at 694.  A reasonable probability is one sufficient to undermine confidence in
the outcome.  Id.; Bone, 77 S.W.3d at 833.








There is a strong presumption an attorney=s actions at trial
were reasonably professional and motivated by sound trial strategy.  Tong v.
State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  An appellant must rebut
this presumption on appeal.  Navarro v. State, 154 S.W.3d 795, 799 (Tex.
App.CHouston [14th
Dist.] 2004, pet. ref=d).  A finding of ineffectiveness cannot
be supported by second‑guessing an attorney=s trial strategy
through hindsight or by the fact that another attorney might have pursued a
different course.  Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App.
1979); Storr v. State, 126 S.W.3d 647, 651 (Tex. App.CHouston [14th
Dist.]  2004, pet. ref=d).  Instead, the alleged ineffectiveness
must be firmly founded in the record.  Bone, 77 S.W.3d at 835; Wade
v. State, 164 S.W.3d 788, 795B96 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  In the absence of a record explaining trial counsel=s actions, a
reviewing court generally cannot find deficient performance unless the attorney=s conduct was so
outrageous that no competent attorney would have engaged in it.  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

When evaluating an allegation of ineffective assistance, an
appellate court looks to the totality of the representation and to the
particular circumstances of each case.  Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999).   If an appellant fails to satisfy either the
deficiency or the prejudice prong of the Strickland test, we do not need
to consider the remaining prong.  Strickland, 466 U.S. at 697.

Dexter=s Testimony that the Injuries were Consistent with a Sexual Assault

In his first point
of error, appellant complains of his trial counsel=s failure to
object to Officer Dexter=s opinion testimony that the complainant=s injuries were
consistent with sexual assault.  At trial, Officer Dexter testified about the
progress of his early investigation into this case.  He learned that a medical
exam was performed on the complainant the day after the sexual assault.  He
reviewed this medical report and interviewed the doctor who performed the exam. 
Appellant contends he received ineffective assistance of counsel when his trial
attorney did not object to the following testimony:

Prosecutor:            Based on the
records that you reviewed, the medical records, in your opinion, were the
complainant=s injuries consistent with what B with a sexual assault?

Officer Dexter:       Yes, ma=am.








Although
defense counsel did not object to this testimony, he addressed it during
cross-examination, when he had Officer Dexter admit that he has no medical
training or no special scientific background, and that he is not qualified to
make medical conclusions by reviewing a doctor=s report.[2] 
Officer Dexter also conceded it is Afair to say@ that the injuries
in the medical report could be consistent with a rougher variety of consensual
sex.  On re-direct examination, the State established that the victim=s age at the time
of the assault (fourteen years old) made it impossible to consent to any sexual
activity with appellant, who was twenty-one at the time.

Appellant=s attorney never objected during this
testimony and never requested to see the medical report.  Appellant argues his
attorney should not have allowed this witness to give an expert opinion about
documents not in evidence that allegedly were never verified as reports of the
complainant=s exam.  He argues this error totally undermined his
case of actual innocence because it was imperative appellant=s counsel attack
all evidence supporting the State=s case.

Later, John Patlan, the doctor who conducted the
complainant=s sex abuse exam, testified he discovered small tears
in the complainant=s hymen and vaginal tissues, redness and
inflammation of the tissues in that area, and a relatively fresh scratch on her
left upper chest (the complainant had already testified this happened as
appellant held her down).  Dr. Patlan stated these injuries Aappeared to be
signs of some forceful penetration.@  On
cross-examination, defense counsel again elicited testimony that the exam alone
could not reveal whether the forceful penetration was from consensual sex.  At
final argument, appellant=s attorney urged the jury to consider the
fact that no DNA evidence linked appellant to this crime.[3]








In light of Dr. Patlan=s testimony, we
cannot find appellant has satisfied the second prong of the Strickland
test.  Officer Dexter=s allegedly harmful testimony was
reiterated with greater force by the examining physician.  Assuming counsel=s failure to
object was error, appellant has not shown there is a reasonable probability
that, but for this deficiency, the result of trial would have been different,
or that this alleged error undermines confidence in the verdict.  Navarro,
154 S.W.3d at 799.  We overrule appellant=s first point of
error.

Dexter=s Testimony about Prior Experience with Appellant

In his second point of error, appellant argues his trial
counsel should have objected to the same testimony he complains of in point of
error two, addressed above.  Officer Dexter testified he agreed with Officer
Yanez, who was familiar with appellant, Athat it would
probably be in our best interest not to interview the Defendant [due to the]
experience we had with the Defendant.@  Specifically,
appellant argues his trial counsel should have objected to this inadmissible
hearsay because it caused the jury to speculate as to what appellant may have
done in the past to cause these officers to decide not to question him. 
Appellant contends this error denied him the right to a fair trial and to his
right of confrontation under the Sixth and Fourteenth Amendments to the United
States Constitution.








Again, even if counsel=s failure to
object amounted to deficient performance under the first prong of the Strickland
test, we cannot find appellant has satisfied the prejudice requirement.  There
is no reasonable probability the result of the trial would have been different
without this testimony.  The record reveals strong evidence of appellant=s guilt.  The
complainant testified appellant=s twelve-year-old nephew, a playmate of
the complainant=s, found her in their apartment complex=s courtyard
talking on a pay phone and asked her to come to his apartment when she was
finished.  When she came over, appellant tricked her into walking to the back
of the apartment by telling her his nephew was in a bedroom; his nephew was not
in the apartment.  The complainant testified appellant then cornered her and
forcefully raped her while she cried and asked him to stop.  The complainant
was examined the following afternoon by Dr. Patlan, who testified her injuries
were consistent with forceful penetration.  The complainant=s and appellant=s ages at the time
of the assault made it impossible for her to consent to such activity.  With
regard to the specific harm flowing from this testimony, appellant later
testified he had spent time in the Texas Department of Criminal Justice,
Institutional Division.[4] 
This testimony could cast light upon Officer Dexter=s allusion to Aexperience@ with appellant. 
We find appellant has not met his burden of showing prejudice under Strickland. 
We overrule appellant=s third point of error.

Appellant=s Testimony about Gang Membership

Appellant contends in his fourth point of error that his
trial counsel=s questioning of him about his gang involvement opened
the door to the State=s cross-examination of that involvement. 
Appellant testified at his trial.  During direct examination, his attorney
asked whether appellant had ever joined a gang or had ever been in trouble with
the law.  Appellant testified he joined the Puro Vato Loco (PVL, or Acrazy people@) gang and spent
time in various juvenile detention facilities before getting in trouble with
the law again and spending fifteen months on a felony charge in the Texas
Department of Criminal Justice, Institutional Division.  Appellant testified
this final incarceration was a Awake-up call@ and, when he was
released in 2001,[5]
he turned his life around.  He stated he had a baby with his girlfriend and
opened a repair shop.








Before beginning its cross-examination, the State
approached the bench and asked to delve further into appellant=s gang
membership.  The prosecutor said she had a police document showing appellant clearly
admitted to gang membership in April of 2003, eight months before the sexual
assault in this case.  Appellant=s counsel stated
the prosecutor had shown him that evidence.  The record between appellant=s direct
examination and defense counsel=s statement that he had seen this evidence
is uninterrupted.  The record, therefore, shows appellant=s attorney knew
about this evidence prior to his direct examination.  During the State=s
cross-examination, appellant testified his life changed when he was released
from prison, and that he was sure he had stopped hanging out with gang
members.  When the prosecutor asked, ADo you remember
telling the officer [in April of 2003] that you=re a member of the
PVL gang?@ appellant replied, AYeah, I remember,
but I wasn=t with them at that time.@

Appellant argues most of his negative past would not have
been raised at trial without defense counsel=s questioning,
including the fact that appellant dropped out of school (appellant also
testified he received his GED while detained in juvenile boot camp), and that
he was involved with a gang.  The record gives minimal insight into defense
counsel=s strategy at this
point in trial other than his statement that appellant=s testimony on
direct shows that, Aif [appellant] changed, it would have been
after 2001 when he was released.@

The record reveals no reason, and we can conceive of none,
why defense counsel would question appellant about his prior gang membership if
he knew the State possessed evidence that appellant admitted to being a PVL
gang member eight months before the sexual assault.  But even if an appellant
shows his attorney=s actions were unreasonable, he must still
show the attorney=s error actually had an adverse effect on
his defense.  Strickland, 466 U.S. at 693.  Although appellant admitted
that he told a police officer in April of 2003 that he was a gang member, he
also testified he was not with them at the time.  In light of the strong
evidence of appellant=s guilt discussed above, we do not find
this testimony sufficient to undermine confidence in the jury=s verdict.








Because we can conceive of no reason for defense counsel=s actions does not
mean he lacked any sound trial strategy for his actions at the time.  We
cannot speculate, on this record, that appellant=s trial attorney
had no professionally sound reason for his conduct.  See Bone, 77 S.W.3d
at 836 (AUnder our system
of justice, the criminal defendant is entitled to an opportunity to explain
himself and present evidence on his behalf.  His counsel should ordinarily be
accorded an opportunity to explain her actions before being condemned as
unprofessional and incompetent.@).  The record must affirmatively
demonstrate the alleged ineffectiveness.  Thompson, 9 S.W.3d at 813. 
Even though this alleged error is one of commission rather than omission, we
find this record is inadequate to support appellant=s claim. 
Appellant=s fourth point of error is overruled.[6]

The trial court=s judgment is
affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 22, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  See Berryhill v. State, 501 S.W.2d 86, 87
(Tex. Crim. App. 1973) (finding prosecutor=s
reference in closing argument to questions he asked of the defendant, that the
defendant had denied, improperly implied the existence of incriminating
evidence not before the jury when coupled with the prosecutor=s argument that, although he could not bring those
matters to the jury, they should speculate about what those matters might be).





[2]  Defense counsel continued the cross-examination by
asking whether Officer Dexter considered himself qualified to make conclusions
based on reading medical reports.  Officer Dexter replied,

Not with
regard to the medical aspect of it, but with regard to what=s consistent with the injuries and the allegations and
the circumstances under which they happened.  I=ve investigated hundreds of these cases; and in this particular
instance, those [injuries] were consistent [with a sexual assault].





[3]  His apparent strategy at this point in trial was to
show that another person could have caused the complainant=s injuries, as he also established that the
complainant dated appellant=s younger
brother around the same time as the assault, that appellant=s brother was bigger in size than appellant, and that
the complainant also lived with her older brother.





[4]  Because appellant chose to testify at his trial, the
State could have introduced this information under Texas Rule of Evidence
609(a).  See Tex. R. Evid.
609(a) (stating that for Athe purpose of attacking the credibility of a witness,
evidence that the witness has been convicted of a crime shall be admitted if
elicited from the witness . . . and the court determines that the probative
value of admitting this evidence outweighs its prejudicial effect to a party.@).





[5]  During cross-examination, the prosecutor established
appellant was released on March 28, 2002, not in 2001 as he had previously
testified.  





[6]  Because appellant did not develop his claim of
ineffective assistance of counsel via a motion for new trial, his remedy for
developing the error, if any, is by a post conviction writ of habeas corpus. 
The doctrine generally forbidding a post-conviction writ of habeas corpus on a
claim rejected on direct appeal does not apply when the record on direct appeal
is insufficient to establish a claim.  Oldham v. State, 977 S.W.2d 354,
363 (Tex. Crim. App. 1998) (quoting Ex parte Torres, 943 S.W.2d 469, 475
(Tex. Crim. App. 1997)).  In a writ of  habeas corpus, there is an Aopportunity to conduct a dedicated hearing to consider
the facts, circumstances, and rationale behind counsel=s actions at that juncture of trial.@  Thompson,
9 S.W.3d  at  814B15.